UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**EXXON MOBIL CORP**                    **CASE NO. 2:25-CV-01696**

**VERSUS**                             **JUDGE JAMES D. CAIN, JR.**

**MUDD FAMILY PARTNERSHIP L L C**       **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is "Mudd Family Partnerships, LLC's Rule 12 Motion to Dismiss" (Doc. 11) wherein Defendant moves to dismiss this Declaratory Action pursuant to Federal Rule of Civil Procedure 12(b).

## BACKGROUND

Plaintiff, Exxon Mobil Corp ("Exxon") filed this declaratory action against Mudd Family Partnership LLC ("Mudd") pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Exxon seeks to have the Court issue a ruling as to the parties' "respective legal rights and obligations concerning the alleged environmental conditions on the Property. Defendant maintains that Exxon Mobil is responsible for alleged damages to the Property as a result of ExxonMobil's predecessors' operations conducted decades ago."[1]

Exxon specifically asks the Court to address the "subsequent purchaser doctrine," and whether Mudd, an alleged subsequent purchaser of property has a right to sue a third party for damage inflicted on the property before the sale in the absence of an express

---

[1] Complaint, ¶ 15, Doc. 1.

assignment or subrogation of the right to sue from the owner of the property when the damage was inflicted. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 so.3d 246, 279-84 (La. 10/25/11)."[2]

Exxon then alleges that the "instruments by which Defendant acquired ownership of the Property do not include the required express assignment of the right to sue. Additionally, Defendant has no contractual relationship or privity with ExxonMobil or its alleged predecessors and Defendant was never assigned a mineral lease or other contractual rights related to historical operations on the Property."[3]

As such, Exxon seeks a declaration that it cannot be held liable to Mudd under any theory of liability. Mudd seeks to dismiss the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## RULE 12(b)(1) STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997), citing

---

[2] *Id.* ¶ 16.
[3] *Id.* ¶ 17.

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, (1981).

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). The party asserting jurisdiction has the burden of pleading and proving that the Court has subject matter jurisdiction and must do so by a preponderance of the evidence. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

When reviewing a "facial attack" on jurisdiction, the well-pleaded factual allegations of the Complaint are accepted as true, and the Court evaluates the sufficiency

of those allegations. *Isom v. Louisiana Off. of Juv. Just.*, No. CV 21-00013, 2021 WL 5763560, at *2 (M.D. La. Dec. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981)). A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992)).

## **LAW AND ANALYSIS**

Mudd maintains that Exxon is seeking an advisory opinion because there is no case or controversy between the parties as of yet considering there has been no environmental testing on the property to establish damage.[4]  Mudd takes the position that it contacted counsel for Exxon to make arrangements to perform testing for environmental damage, whereas, Exxon contends that Mudd's intent was to negotiate damages and settlement for the potential environmental damage to the property.

Mudd acquired title to the property through a Sheriff's sale on April 16, 2025,[5] thirty-three years after operations on the property ended and more than fifty-three years after ExxonMobil's predecessor assigned all of its interest in the property and related operations to another entity.[6] Shortly after the purchase, Mudd contacted Exxon's counsel about the alleged environmental damage to the property.  Exxon alleges that Mudd proposed a settlement range of $3 to $7 million.[7] In its Memorandum, Exxon interprets this exchange as a threat of litigation.

---

[4] Mudd informs the Court that the Louisiana Supreme Court has heard legal arguments on this exact legal issue in *Vinton Harbor & Terminal Dist. v. Reunion Energy Co.*, 417 So.3d 1028, 1031, *writ granted,* (La. 423 So.3d 75).
[5] Complaint, ¶ 11, Doc. 1.
[6] *Id*. ¶ 12.
[7] *Id.* ¶ 13.

Mudd informs the Court that it has not filed a lawsuit regarding the alleged environmental damage and argues that Exxon's purpose for filing this lawsuit is to seek a determination of its defense against liability, specifically, through the subsequent purchaser doctrine. Mudd maintains that this case is not ripe and thus Exxon is precluded from the use of a declaratory judgment action to test Exxon's defense against potential claims.

Article III of the Constitution limits the jurisdiction of the judiciary to 'cases' or 'controversies.'" *Dennis Arceneaux v. Huntington Ingalls Incorporated, F/K/A Northrup Grumman Ship Systems, Inc., F/K/A Avondale Industries, Inc., and Underwriters at Lloyd's London,* 2025 WL 3140367, at *2 (E.D. La. Noc. 10, 2025). "No principal is more fundamental to the judiciary's proper role in out system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 443, 341-42 (2006)).

"To establish Article III standing, a plaintiff must show three things: (1) that he has suffered an "'injury in fact'—an invasion... that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) that "the injury [is] 'fairly traceable to the challenged action of the defendant;" and (3) that "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

"The Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." *Id.* citing 28 U.S.C. §

3302(a). In deciding if dismissal of a declaratory judgment action is warranted, a district court must engage in a three-step inquiry, evaluating: '(1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action.'" *Id.* citing *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).

Applying the above factors, Mudd contends that (1) Exxon's complaint is not justiciable because it would not provide a final and conclusive determination of the parties' rights; (2) the jurisprudence of the United States Supreme Court does not allow declaratory judgment actions to serve as a pre-litigation test of potential defenses to a potential lawsuit; and (3) even if Exxon's claims were not legally barred, the facts and circumstances of this case do not warrant discretionary consideration by this Court.

Mudd suggests that Exxon is using the instant declaratory action to forum shop, thus depriving Mudd as a potential plaintiff of its choice of forum. Considering the *Vinton Harbor* case currently pending before the Louisiana Supreme Court that will address the subsequent purchaser doctrine, Mudd accuses Exxon of seeking a premature determination on issues that will not actually prevent future litigation. Mudd maintains that the Fifth Circuit's recent jurisdiction establishes that testing defenses and seeking a liability determination based on past conduct is a misuse of the Declaratory Judgment Act.

*Justiciable action*

"When considering a declaratory judgment action, a district court must first determine whether the action is justiciable, which frequently boils down to a question of ripeness." *TOTAL Gas & Power N. Am., Inc. v. FERC,* 859 F.3d 325, 332 (5th Cir. 2017),

*as revised* (July 10, 2017). "Specifically, the ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Id.* (citing *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n. 12 (5th Cir. 2008)). "Ripeness is a twofold inquiry that requires courts to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 311 (5th Cir. 2021) (citing *Abbott Labs. V. Gardner*, 387 U.S. 136, 149 87 S.Ct. 1507 (1967)).   "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003).

The Fifth Circuit has noted that "[t]he threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir 2000). Mudd contends that this litigation is based on undetermined environmental damage that is not specific and concrete. Exxon argues that the email exchange between counsel evinces a threat of litigation.

Mudd argues that there is no justiciable action here because no case or controversy actually exists.  Mudd informs the Court that there is no lawsuit filed as of yet against Exxon because it has not been determined as to whether or not there is any environmental damage to the property. Mudd notes that there has been no environmental testing performed that would indicate if the property has been damaged. Exxon argues that the Complaint and the evidence demonstrate an actual controversy; Exxon relies on ariel photography and an email that Mudd sent to Exxon concerning operations on the property

that indicated there was significant activity and pit usage, and further remarking that Exxon was a primary operator on the property. Exxon also relies on the email's "Subject line"— "Confidential settlement discussions pursuant to article 408." Exxon interprets this as a threat of litigation. Exxon also directs the Court to an *Amicus brief* attached to Mudd's Motion to Dismiss filed by the American Petroleum Institute in *Vinton Harbor* that describes a secondary market in Louisiana legacy litigation. In this market, prospective plaintiffs purchase properties where historical oil and gas operations have occurred for the sole purpose of bringing (or threatening) a legacy suit in the hope of securing an unearned windfall settlement or judgment. As support, the API attaches a power point presentation that offers stop-by-step guidance on how to obtain a winning "lottery ticket" by buying property to bring a legacy lawsuit and successfully litigate for environmental damages. Exxon remarks that the Mudd Family has taken strikingly similar steps that culminated in the August 2025 email exchange between Mudd and counsel for Exxon.

"Even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citing *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)). Here, Mudd submits that Exxon would not be prejudiced or subject to hardship if this Court withheld consideration, noting that Exxon's request of the Court is to determine that if it were sued, would the subsequent purchaser doctrine be a viable defense? Mudd advises the Court that if the Mudd Family chose to sue Exxon, Exxon could assert the defense of the subsequent purchaser doctrine. Thus, Exxon would not be prejudiced or suffer any hardship were the Court to decline to consider Exxon's declaratory action.

Exxon argues that Mudd has already sought a multi-million-dollar settlement from Exxon and declined Exxon's offer to have its independent environmental consultants assess the property. Thus, Exxon's only options are either to ignore the Mudd Family's demand and wait for a lawsuit to be filed, or to seek declaratory relief. Thus, Exxon maintains that this alone creates a hardship for Exxon.

Additionally, Exxon contends that there is a case or controversy because the Mudd Family, and Mr. Mudd routinely bring legacy lawsuits before conducting environmental sampling. Thus, Exxon asserts that the action is ripe for review.

Mudd argues that Exxon's defense is not ripe and the proper time for Exxon to litigate any defense it may have to the Mudd family claims is in response to the claim as expressed in Federal Rule of Civil Procedure 12, titled "**Defenses and Objections; <u>When and How Presented</u>**.

The Court finds that Exxon has failed to establish that this declaratory judgment action is ripe.  First, there has been no environmental testing on the subject property and therefore at this time, any injury to Exxon would be speculative or conjecture and furthermore, there is no hardship to Exxon if this action were dismissed.  Exxon could easily assert its defense, as it most probably will, if at any point a lawsuit is filed.

*Exxon's use of the Declaration Judgment Action to test its defenses*

Mudd asserts that Exxon is requesting a determination that it can assert the subsequent purchaser defense that would preclude its liability to the Mudd Family. Mudd argues that the validity of a defense that Exxon may or may not raise in a future case is not a justiciable controversy. In *Calderon*, the Supreme Court held that "a declaratory

judgment as to the validity of a defense the [potential defendant] may, or may not, raise" in a future lawsuit "would not resolve the entire case or controversy . . . but would merely determine a collateral legal issue governing certain aspects of t[the parties'] pending or future suits." *Calderon v. Ashmus*, 523 U.S. 740, 747, 118 S.Ct. 1694, 1698-1699 (1998).

Mudd informs the Court that *Calderon* is still good law as reflected in the Eastern District of Louisiana's recent decision in *Dennis Arceneaux v. Huntington Ingalls Incorporated*, dismissing a declaratory judgment action, holding that the use of a declaratory judgment action to test potential defenses is prohibited. 2025 WL 3140367, at *3-4 (E.D. La. Nov. 10, 2025).

Exxon argues that *Calderon* does not support Mudd's point that the Declaratory Judgment Act does not permit a plaintiff to test its defenses.  Exxon remarks that the case held that the declaration would only resolve what defenses the State could raise under certain hypothetical circumstances, whereas the instant Complaint goes directly to the controversy—whether the Mudd Family would have a legal right to sue for damages. Exxon remarks that in the event that the Mudd Family does bring a lawsuit, Exxon will seek dismissal of any claims for money damages under the subsequent purchaser rule.

Exxon also raises an issue as to Mudd's interpretation of the *Arceneaux* case; the issue in that declaratory action was if plaintiff filed a mesothelioma damages action against the defendant and its insurer, would the case be removable based on federal officer status. The court held that the controversy was not justiciable because it would not completely resolve the true dispute between the parties and would only determine a collateral issue. See  *e.g., Gov't Emp. Ins. Co. v. LeBleu*, 272 F.Supp. 421, 426-27 (E.D. La. 1967).

Additionally Exxon contends that Mudd's arguments of ripeness because Exxon might be subject to other causes of action such as a citizen suit claim under Louisiana Revised Statute 30:16 or other potential defendants, is not the law because Exxon is entitled to a declaratory judgment as to private claims, citing *Friends of the Earth v. Potomac Elec. Power Co.*, 419 F.Supp. 528, 532 (D.D.C. 1976) ("While a declaratory judgment must be conclusive and must settle the controversy, this does not mean that every aspect of the suit must be resolved by the declaratory judgment.")

Here, it appears that Exxon is seeking a declaratory judgment as to the validity of the subsequent purchaser doctrine, a defense it concedes it will assert, should the Mudd Family determine through environmental testing that there is environmental damage to the property and establishes causation with regard to Exxon. The Court finds that this is a testing of the waters, as to Exxon's defense of a lawsuit, if the Mudd Family files suit against Exxon. In other words, there is no justiciable question until the Mudd Family first performs testing of the property for environmental damages. Exxon's declaratory judgment action is an obvious attempt to gain a litigation advantage by obtaining an advance ruling on an affirmative defense. Calderon, 523 U.S. at 746; see also *Coffman v. Breeze Corp.,* 323 U.S. 316, 65 S.Ct. 298 (1945).

## <u>CONCLUSION</u>

Because Exxon's declaratory judgment action is not justiciable, the Court does not have subject matter jurisdiction, nor will the Court exercise its discretion to decide the action. As such, the Court will dismiss this matter with prejudice.

**THUS DONE AND SIGNED** in chambers on this 16th day of March, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**